IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

               Plaintiff,

Vs.                                  No.  05-40123-01-SAC

RICHARD PRESTON HARWELL,

               Defendant.

MEMORANDUM AND ORDER

       The case comes before the court on the defendant's following pretrial

motions:  motion to dismiss multiplicitous indictment or, alternatively, to require the

government to elect counts (Dk. 14), motion to disclose expert testimony (Dk. 17),

motion for notice of evidence (Dk. 19), and sealed motion to suppress evidence

found in the search of the residence at 214 Iowa Avenue, Salina, Kansas, on April

15, 2005, (Dk. 20).  The government filed a consolidated response to the

defendant's first three pretrial motions and only referred to the defendant's sealed

motion to suppress saying the issues were largely factual and reserving its argument

for the hearing.[1]  (Dk. 34).  The defendant also has filed additional authority in

---

[1]The court prefers receiving a brief from the government in response to a
defendant's sealed motion to suppress.  Everyone benefits from knowing in
advance the government's position on the relevant facts, the significant issues, and

support of his motion to suppress.  (Dk. 37).  At the hearing, the parties agreed to submit on the briefs all pending matters except for the defendant's motion to suppress.  The parties then presented the testimony of two officers with the Salina Police Department, Investigator James Feldman and Investigator Janell Zimmerman, and presented other evidence and oral argument in support of their positions.  Having reviewed all matters submitted and having researched the relevant law, the court is ready to rule on the motion.

**INDICTMENT**

The defendant Richard Preston Harwell is charged in a five-count indictment with weapon violations.  Count one charges the defendant with being a felon in possession of a shotgun on April 15, 2005, in violation of 18 U.S.C. § 922(g)(1).  In the alternative to count one, count two charges the defendant with being an unlawful user and addict to a controlled substance in possession of the same shotgun on April 15, 2005, in violation of 18 U.S.C. § 922(g)(3).  Count three charges the defendant with possessing the same shotgun which was not registered in violation of 26 U.S.C. § 5861(d).  Count four charges the defendant with being a felon in possession of an explosive on April 15, 2005, in violation of

———————————————

the controlling precedent.  The government may file its brief under seal to preserve any unresolved concerns over privacy interests.

18 U.S.C. § 842(i)(1).  In the alternative to count four, count five charges the

defendant with being an unlawful user and addict to a controlled substance in

possession of the same explosive on April 15, 2005, in violation of 18 U.S.C. §

842(i)(3).

## MOTION TO DISMISS MULTIPLICITOUS INDICTMENT OR, ALTERNATIVELY, TO REQUIRE THE GOVERNMENT TO ELECT COUNTS (Dk. 14).

Observing that the first three counts allege three separate theories of

criminal prohibition for the defendant's possession of the same firearm on the same

date and that the last two counts allege two different theories for prohibition for the

defendant's possession of the same explosive on the same date, the defendant

argues these multiplicitous counts must be dismissed or the government must be

required to elect now which counts to proceed with and dismiss the others.

Multiplicity occurs when an indictment has multiple counts covering

the same criminal behavior.  *United States v. Johnson*, 130 F.3d 1420, 1424 (10th

Cir. 1997), *cert. denied*, 525 U.S. 829 (1998).  Multiplicitous counts "are improper

because they allow multiple punishments for a single criminal offense."  *United*

*States v. McIntosh*, 124 F.3d 1330, 1336 (10th Cir. 1997) (citation omitted).  They

also "'may improperly suggest to the jury that the defendant has committed more

than one crime.'"  *United States v. Johnson*, 130 F.3d at 1424 (quoting *United*

3

*States v. Morehead*, 959 F.2d 1489, 1505 (10th Cir. 1992). The possibility of multiple punishments for the same offense "raises double jeopardy implications." *Id*. Courts look to *Blockburger v. United States*, 284 U.S. 299 (1932), in addressing the double jeopardy issue: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Id*. at 304 (citation omitted); *see also Texas v. Cobb*, 532 U.S. 162, 163 (2001). The rule in *Blockburger* assumes that "Congress ordinarily does not intend to punish the same offense under two different statutes." *Whelan v. United States*, 445 U.S. 684, 692 (1980). Consequently, if two statutory provisions define the same offense, courts are to construe the statutes as not authorizing cumulative sentences "in the absence of a clear indication of contrary legislative intent." *Id*.

The Tenth Circuit in *United States v. Johnson* has held that the charge for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and the charge for being an unlawful user of controlled substances in possession of a firearm in violation of 18 U.S.C. § 922(g)(3) are "multiplicitous counts" and that a defendant "can only be convicted and punished for one of the § 922(g) counts." 130 F.3d at 1426. In charging counts one and two and counts four and five in the

alternative, the government recognizes that the counts are multiplicitous but contends that it is appropriate to present the jury with the alternative counts based on separate and distinct statuses for the firearm possession being unlawful.[2]

The government retains considerable discretion in fashioning the counts of an indictment. *United States v. Batchelder*, 442 U.S. 114, 124 (1979) (citations omitted). It is also within the trial court's discretion "to require the prosecution to elect between multiplicitous counts before trial." *United States v. Johnson*, 130 F.3d at 1426 (citations omitted). The court in *Johnson* observed presenting multiplicitous counts to a jury could create the false impression about the level of the defendant's criminal activity. *Id*. "'Once such a message is conveyed to the jury, the risk increases that the jury will be diverted from a careful analysis of the conduct at issue,' and will reach a compromise verdict or assume the defendant is guilty on at least some of the charges." *Id*. (quoting *United States v. Clarridge*, 811 F. Supp. 697, 702 (D.D.C. 1992)). The risk of false impressions here does not appear

_____

[2]The defendant does not specifically contend that count three which charges a violation of 26 U.S.C. § 5861(d) is multiplicitous. The Tenth Circuit's decision in *Johnson* does not address this statute, and the reasoning adopted there as persuasive–intent of Congress to prohibit in a single legislative enactment different groups of individuals from possessing firearms--does not apply to § 5861(d) which prohibits anyone from possessing an unregistered firearm. A conviction under § 5861(d) would require proof of additional facts not required for the 922(g) offenses.

5

to be great or unfairly prejudicial to the defendant, as the entire case involves simply the defendant's alleged possession of two weapons on a single day, and the indictment plainly identifies which counts are brought as alternative disqualifying statuses.  Just as in *Johnson*, there is the possibility the jury may acquit the defendant Harwell of one count and convict on the alternative count.  The court will not require the government to elect between the alternative counts.  The defendant's motion is denied.

## MOTION TO DISCLOSE EXPERT TESTIMONY AND MOTION FOR NOTICE OF EVIDENCE (Dks. 17 and 19).

The government agrees to provide the requested information no later than fourteen days prior to trial.  In light of the government's representation, the court denies the defendant's motions as moot.

## MOTION TO SUPPRESS

The defendant seeks to suppress evidence seized during the execution of a search warrant on the residence at 214 Iowa Avenue, Salina, Kansas, on April 15, 2005.  The defendant argues that the search warrant is constitutionally defective and that it was executed in an unconstitutional manner.  The defendant contends: (1)  the affidavit fails to provide probable cause for issuance of the search warrant; (2) as the affiant, the executing officer is not entitled to the good faith exception in

6

*Leon*; (3) the warrant was overbroad; and (4) the warrant was executed in violation of the knock and announce rule.

*Standing*

The defendant has shown he has the required standing to object to the search of the dwelling at 214 Iowa.  To the officers executing the search warrant, the defendant identified as his property certain bags of clothing stored in the bedroom where he was found when officers entered the dwelling.  Based on the amount of clothing and its location in the room, the court infers that the defendant considered the room either to be his residence or at least a place he could spend the night.  The defendant has carried his burden of showing a subjective expectation of privacy in the house which society would recognize as reasonable.  *See Minnesota v. Carter*, 525 U.S. 83, 89 (1998) (The Supreme Court has recognized that "a person may have a legitimate expectation of privacy in the house of someone else.").

*Probable Cause Affidavit*

<u>Facts</u>

The search warrant affidavit was signed on April 15, 2004, by Lane Mangels, an investigator with City of Salina Police Department who was working with the I-135/1-70 Drug Task Force.  Investigator Mangels avers that he "believes there is evidence of the crime of possession of marijuana at 214 Iowa Avenue,

7

Salina, Saline County, Kansas."  Under the heading of probable cause information,

Mangels lays out the following in support of his belief.  The rental agreement for the

residence owned by Bostater Realty shows Jeffrey Powell as the renter with Miranda

Goldsmith and Joe Douglas listed as other occupants.  An employee with Bostater

Realty identified the renter Jeffrey Powell from a photo lineup.  The City of Salina's

records show the water services provided to this residence since March 30, 2005,

are in the name of Jason Castillo.  On April 14, 2005, two employees for Bostater

Realty contacted an officer assigned to the drug task force with a report of possible

drug activity at this residence.  The employees told the officer that they went to the

residence on April 13, 2005, around 4:00 p.m. to perform the biannual maintenance

service of changing the furnace filter and smoke alarm batteries.  The employees

said they had to knock on the door and announce themselves three separate times

before a female answered the door.  As soon as the door was opened, both

employees smelled the odor of burning marijuana.  One of the employees said he

was familiar with the odor as he had smoked marijuana when he was younger and

had smelled this odor on several occasions at other rental properties.  The

employees explained to the woman at the door that they were there to change the

filter and batteries.  The woman told them they would have to wait a few minutes

before they could come inside.  The employees offered to leave the items with her,

and a male voice from inside announced that they could leave the filter and batteries and he would install them.  The employees gave the items to the woman and left the residence.

As part of the provided probable cause information, the affidavit includes the following summary of criminal history records.  With regards to Jason Castillo, the person in whose name water services to this residence were established just two weeks earlier, the affidavit recounts that in October of 2004, Castillo was convicted in Saline County District Court of possession of marijuana with the intent to sale, possession of methamphetamine and possession of drug paraphernalia after an arrest on these charges in April 8, 2004.  On February 15, 2005, just one month before the search warrant was issued, Castillo was arrested in Salina for possession of methamphetamine and drug paraphernalia.  With regards to the renter of this residence, Jeffrey Powell, he was arrested in Salina, Kansas, three months before the search, January 18, 2005, for possession of marijuana with the intent to sale. Miranda Goldsmith, one of the listed occupants on the rental application, was arrested with Powell on this same charge.  Just over two months before the search, she was again arrested for drug charges, but this time it was for possession of methamphetamine and possession of drug paraphernalia.

On April 15, 2005, a search warrant was signed by a Saline County

District Court Judge that contained a written finding that:

> there is probable cause to believe that an offense against the laws of the State
> of Kansas have been committed and that certain items, to wit:
> METHAMPHETAMINE OR ANY OTHER CONTROLLED
> SUBSTANCES; ANY OTHER EVIDENCE RELATED TO THE
> CONTROLLED SUBSTANCES ACT; . . .
> which items are contraband, or are fruits, instrumentalities or evidence of such
> offense and are located in or upon the following described persons, places, . .
> ., to wit:
> 214 IOWA AVENUE, SALINA, SALINE COUNTY, KANSAS, A BLUE
> WITH WHITE TRIM SINGLE STORY RESIDENCE WITH ATTACHED
> GARAGE AND ANY OUTBUILDINGS.

<u>Argument</u>

The defendant attacks the affidavit as failing to provide any probable

cause that methamphetamine would be found at this residence when the only

evidence of drug-related activity occurring there was the odor of burning marijuana.

The methamphetamine arrests of the renter and occupants are dated, and the

affidavit does not link those arrests or any other drug trafficking activity to this

residence.  The defendant cites case law observing the "common sense proposition

that the smell of burnt marijuana is indicative of drug usage, rather than drug

trafficking . . . ."  *United States v. Wald*, 216 F.3d 1222, 1226 (10th Cir. 2000).

The defendant further contends that the smell of burning of marijuana without other

information about the amount of marijuana, number of users, method of use, pattern

of use, or regularity of use is not enough to sustain probable cause when there is no

10

reasonable basis to believe the drug may still be there forty-eight hours later in the light of the nature and result of the very drug-related activity–the consumption of marijuana.

## Governing Law

Probable cause to issue a search warrant exists when the facts and circumstances laid out in the supporting affidavit "would lead a prudent person to believe a fair probability exists that contraband or evidence of a crime will be found in a particular place." *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001) (citing *United States v. Wicks*, 995 F.2d 964, 972-73 (10th Cir.), *cert. denied*, 510 U.S. 982 (1993)), *cert. denied*, 535 U.S. 945 (2002).  The task of an issuing judge is "to make a practical, common-sense determination" from the totality of the circumstances whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The issuing judge is expected to draw reasonable inferences from the affidavits.  *See United States v. Edmonson*, 962 F.2d 1535, 1540 (10th Cir. 1992).

If the judge considers only the supporting affidavit in issuing the warrant, the reviewing court likewise determines the existence of probable cause for the warrant exclusively from the supporting affidavit's four corners.  *See Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n. 8 (1971); *United States v.*

11

*Beck*, 139 Fed. Appx. 950, 954 (10th Cir. 2005).  In determining whether probable

cause supports the search warrant, the court reviews the sufficiency of the

underlying affidavit based on the totality of the circumstances to ensure "the

magistrate had a substantial basis for concluding that probable cause existed."

*United States v. Tisdale*, 248 F.3d 964, 970 (10th Cir. 2001) (internal citations and

quotations omitted), *cert. denied*, 534 U.S. 1153 (2002).  "Searches conduct

pursuant to a warrant are favored, and as such, the magistrate's determination that

probable cause exists is entitled to great deference.  *United States v. Gonzales*, 399

F.3d 1225, 1228 (10th Cir. 2005) (citations omitted).

  The existence of probable cause is a "common-sense standard."

*United States v. Wicks*, 995 F.2d at 972.  "[P]robable cause is a fluid

concept-turning on the assessment of probabilities in particular factual contexts-not

readily, or even usefully, reduced to a neat set of legal rules."  *Gates*, 462 U.S. at

232.  Probable cause is more than a mere suspicion, but considerably less than what

is necessary to convict someone.  *United States v. Ventresca*, 380 U.S. 102 (1965).

Probable cause "requires a nexus between suspected criminal activity and the place

to be searched."  *United States v. Corral-Corral*, 899 F.2d 927, 937 (10th Cir.

1990).  Hearsay evidence may form the basis for a probable cause determination.

*See, e.g., Jones v. United States*, 362 U.S. 257, 269 (1960) (the use of hearsay

evidence is sufficient to establish probable cause "so long as a substantial basis for crediting the hearsay is presented.")

"A search warrant may not issue if based upon information that has grown stale, *i.e.*, information that no longer supports an affidavit's underlying assertion that the item sought will be found in the area or location to be searched." *United States v. Cantu*, 405 F.3d 1173, 1177 (10th Cir. 2005).  Staleness is not determined merely by counting the number of days between the observations recorded in the affidavit and the date of the application for a search warrant.  *United States v. Snow*, 919 F.2d 1458, 1459 (10th Cir. 1990).  Instead, staleness "'depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized.'"  *Cantu*, 405 F.3d at 1177 (quoting *Snow*, 919 F.2d at 1460).  Where the offense in question is ongoing and continuing, the passage of time is not critically important.  *United States v. Mathis*, 357 F.3d 1200, 1207 (10th Cir. 2004).

"[O]fficers are generally not required to second-guess the magistrate's decision in granting a warrant."  *United States v. Gonzales*, 399 F.3d at 1228-29. Consequently, even if a search warrant is ultimately found unsupported by probable cause, evidence seized pursuant to it will not be suppressed when the officers executing the warrant "acted with an objective good-faith belief that the warrant was

properly issued by a neutral magistrate." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000), *see United States v. Leon*, 468 U.S. 897, 922-23 (1984). "'Just as reviewing courts give 'great deference' to the decisions of judicial officers who make probable cause determinations, police officers should be entitled to rely upon the probable-cause determination of a neutral magistrate when defending an attack on their good faith for either seeking or executing a search warrant.'" *United States v. Soderstrand*, 412 F.3d 1146, 1153 (10th Cir. 2005) (quoting *United States v. Tuter*, 240 F.3d 1292, 1300 (10th Cir.), *cert. denied*, 534 U.S. 886 (2001)), *cert. denied*, 126 S. Ct. 1478 (2006).

In exercising the exclusionary rule, the court's "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 923, n. 23. "In answering this question, the court should consider all of the circumstances and assume that the executing officers have a 'reasonable knowledge of what the law prohibits.'" *United States v. Riccardi*, 405 F.3d 852, 863 (10th Cir.) (quoting *Leon*, 468 U.S. at 919 n.20), *cert. denied*, 126 S. Ct. 299 (2005). The Supreme Court in *Leon* identified four situations in which officers relying on an invalid warrant could not benefit from the good faith exception to the exclusionary rule. 468 U.S. at 922-23. The defendant here argues the

following two apply:  1) "the issuing magistrate wholly abandoned his judicial role," and 2) the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  468 U.S. at 923.

Analysis

"In reviewing suppression motions, courts have the discretion to proceed directly to an analysis of the good-faith exception without first addressing the underlying Fourth Amendment question."  *United States v. Danhauer*, 229 F.3d at 1005.  The defendant argues that several circumstances both call into question whether the warrant is supported by probable cause and whether the good-faith exception is applicable here.  For its convenience, the court will separate its analysis by each argued circumstance and collapse its analysis of probable cause and the good-faith exception.

The defendant highlights the discrepancy between the supporting affidavit that seeks "marijuana [and] any other controlled substances" and the warrant that  authorizes the seizure of "methamphetamine or any other controlled substances."  The defendant contends the affidavit does not afford probable cause for finding methamphetamine at the residence and, assuming a typographical error, more should be expected of search warrants of residences so the issuing judge must

15

have abdicated his role and merely signed off on the warrant without evaluating the sufficiency of the warrant. The defendant denies that the odor of burning marijuana and the arrest records provide probable cause to believe that methamphetamine and other evidence of drug trafficking would be found at the residence particularly when considering the staleness inherent in the drug usage evidence.

The probable cause circumstances appearing in the supporting affidavit lack the investigative detail and specificity frequently seen in search warrant affidavits reviewed in this court. It is not, however, this court's role to act as a supervising law enforcement officer and say what more they could have been done to develop additional facts, to correct apparent typographical mistakes, and to present a stronger affidavit. The court's role is to review the affidavit and warrant and determine whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.

The odor of burning marijuana emanating from the open front door of a single home would lead a reasonable officer to believe that marijuana was probably present in the residence. *Cf. United States v. Morgan*, 160 Fed. Appx. 694, 697-698, 2005 WL 3475864 at *3 (10th Cir. 2005), *pet. for cert. filed*, No. 05-9944 (Mar. 20, 2006). If an officer had only the evidence of the odor of burning marijuana and knew nothing more about the circumstances concerning the detection

16

of the odor, the involved dwelling and its occupants, then the reasonableness of believing the marijuana remained in the dwelling would dissipate quickly with the passage of time.  The officers here knew more.

The management company's employees went to this single-family dwelling around 4:00 p.m. on a weekday.  They knocked on the door three times and announced themselves.  The occupants not only were slow to answer the door but they requested the employees to wait a few minutes outside before servicing the rental home.  When the employees suggested leaving the items, a male occupant inside who was overhearing the conversation promptly volunteered to take care of the items.  Not only the time of day but the occupants' suspicious behavior towards the management company employees would indicate the use of controlled substances was not a single, isolated occurrence.

Next, the investigating officer learned that the occupants of the home had a recent series of arrests for drug-trafficking and drug-related offenses.  The renter, Jeffrey Powell, and a listed occupant, Miranda Goldsmith, had been arrested together less than three months earlier in the same town for possession with the intent to sale marijuana in the same town.  Salina police arrested Ms. Goldsmith again three weeks later for possession of methamphetamine and drug paraphernalia.  Just two weeks before the search, Jason Castillo had become the named party on

the water service to this residence.  Castillo had convictions in 2004 in Salina for possession of marijuana with the intent to sale and possession of methamphetamine and drug paraphernalia.  Castillo was arrested in Salina less than two months before the search for possession of methamphetamine and drug paraphernalia.  In short, two known occupants and a third probable occupant had a series of arrests for drug-trafficking and drug-related offenses all within the last three months and a drug-trafficking conviction within the last year.[3]  Based on the number of recent arrests for drug-related activities involving several residents[4] of this dwelling, the odor of burning marijuana and the suspicious circumstances surrounding its detection, and the common-sense notion that users and traffickers will keep controlled substances in their residences, a well-trained officer could reasonably infer that the occupants of the home were involved in the ongoing and continuing offenses of possessing and trafficking in controlled substances.

---

[3]"'The use of prior arrests and convictions is not only permissible, . . . but is often useful. This is especially so where, as in the matter presently before the court, the previous arrest or conviction involves a crime of the same general nature as the one which the warrant is seeking to uncover.'  *United States v. Conley*, 4 F.3d 1200, 1207 (3d Cir. 1993)[, *cert. denied*, 510 U.S. 1177 (1994)]." *United States v. Broyles*, 2002 WL 1808751 at *2 (D. Kan. 2002).

[4]The affidavit does not indicate any familial relationships between the occupants.  The arrest records, however, show the occupants did share a common interest in trafficking and using controlled substances.

The defendant's argument lacks merit that the issuing judge must have abandoned his judicial role as evidenced by his failure to notice the discrepancy between marijuana in the affidavit and methamphetamine in the warrant.  The issuing judge could have noticed the discrepancy and was unconcerned with its significance, because both the affidavit and the warrant reference "controlled substances" and the arrest records for the suspects confirm their involvement with more than one controlled substance.  There is no convincing indication that the issuing judge abandoned his judicial role.

The supporting affidavit and the actual search warrant were sufficient to merit reasonable reliance by the police officers.  While the affidavit could have been more complete and may not have contained all the information necessary to sustain a probable cause finding to search for methamphetamine and drug-trafficking evidence, the court believes it contains more information than a "bare bones" affidavit.  The error and shortcomings noted in the defendant's arguments do not show the affidavit here to be a "bare bones affidavit, containing only conclusory statements and completely devoid of factual support."  *See United States v. Rowland*, 145 F.3d 1194, 1207 (10th Cir. 1998) (citing *Leon*, 468 U.S. at 926).  The applicability of the good faith exception does not turn on what is absent from the affidavit but on what is present.  The series of recent drug trafficking arrests

19

involving several occupants of a single-family dwelling with evidence confirming the presence of controlled substances in the dwelling shows the affidavit to be more than a bare bones affidavit.  As long as the affidavit, like the one here, contains sufficient information for a reasonable officer to believe the warrant is valid, the good faith exception applies.  Nor is the warrant here facially deficient.  It states with particularity the place to be searched and the items to be seized. The court finds that a law enforcement officer could reasonably rely on this search warrant.

The defendant urges the court to disqualify the good-faith exception in that the same officer served as the affiant and as one of the officers executing the search warrant.  The dual role served by Officer Mangels here does not by perforce undermine or frustrate the Supreme Court's policy reasons for the good-faith exception.  Even if he prepared the affidavit, Officer Mangel remains entitled to rely on the probable-cause determination of a neutral issuing judge in such cases like here when the probable cause determination is a close one.  The court finds that a reasonably well-trained officer in Officer Mangel's shoes, exercising his own professional judgment, would not have recognized the deficiencies with the affidavit and warrant as so flagrant to render the search invalid despite the issuing judge's authorization.  Accordingly, this court rules that the evidence obtained in the residence as a result of the search in question should not be suppressed under the

*Leon* good-faith exception.

*Knock and Announce*

Facts

Around 7:45 p.m., on April 15, 2005, there was still a fair amount of light outside but it was approaching dusk. With the search warrant in hand, five officers with the Salina Police Department, four in plain clothes and one in uniform, parked on a street behind the residence at 214 Iowa. They approached the single-family dwelling from its backyard. Two of the officers in plain clothes, Investigator James Feldman and Investigator Janell Zimmerman, were assigned the responsibility of making initial contact and entry into the residence. They walked along the side of the dwelling with the attached garage.

Coming around the southeast corner of the dwelling with their weapons out, Investigators Feldman and Zimmerman saw the garage door standing open with the light on inside and immediately encountered a white male, later identified as David Bolen, standing in the driveway but near the open garage door. Zimmerman was in front and observed that Bolen did not act surprised as he had seen them walk around the corner. She identified herself to Bolen by saying her name and by showing her badge. She informed Bolen that the officers were there to execute a search warrant on the dwelling. Bolen did not raise his voice, resist, or cause the

21

officers any problem.

After Investigator Zimmerman made this initial contact with Bolen, Investigator Feldman continued into the garage towards the door leading inside the rest of the dwelling.  While Bolen was not asked whether he lived there, Bolen told officers that there were others inside.  Investigator Feldman determined the interior garage door was unlocked, and while opening it, he announced, "police, search warrant" and then entered.  As he proceeded through the house securing each room, Investigator Feldman continued announcing multiple times his presence and purpose.  Investigator Zimmerman was not far behind him.  The investigators testified that they did not knock on the doors because they believed by contacting David Bolen in or near the open garage door they had already contacted someone in the residence.

Arguments

The defendant argues that because officers encountered Bolen outside the curtilage of the house the officers had to knock and announce before crossing the curtilage of that house whether it be through the garage door or through the interior door leading to the rest of the house.  The defendant contends the officers were not relieved of this obligation by reason of the open garage door.  The government responds that suppression of the evidence is inappropriate, for while the

officers did not knock on any door and no exigent circumstances existed the

officers did fulfill the ultimate requirements of the knock and announce rule by

identifying themselves and the purpose of their presence to David Bolen before

entering the home and then in announcing their presence to other persons throughout

the execution of the search warrant.

<u>Governing Law</u>

The search in this case was executed by state officers acting on a

warrant issued by a state court.  The court evaluates those actions in light of the

Fourth Amendment's reasonableness requirement.  *Wilson v. Arkansas*, 514 U.S.

927, 934 (1995) (common-law knock and announce principles are part of the Fourth

Amendment's reasonableness requirement); *see United States v. Cline*, 349 F.3d

1276, 1288 (10th Cir. 2003) ("The knock and announce rule contained in [18

U.S.C.] § 3109 forms a part of the reasonableness inquiry under the Fourth

Amendment.") (internal quotation and citation omitted)).  The "knock-and-announce

principle is one focus of the reasonableness enquiry."  *United States v. Banks*, 540

U.S. 31, 36 (2003).  As the Supreme Court recognized in *Wilson*, this requirement

of reasonableness is "flexible" and not to be enforced as a "rigid rule of

announcement that ignores countervailing law enforcement interests."  514 U.S. at

934.[5]  What is a reasonable execution of a warrant is determined on a case-by-case

basis:

> Although the notion of reasonable execution must therefore be fleshed out,
> we have done that case by case, largely avoiding categories and protocols for
> searches.  Instead, we have treated reasonableness as a function of the facts
> of cases so various that no template is likely to produce sounder results than
> examining the totality of circumstances in a given case; it is too hard to invent
> categories without giving short shrift to details that turn out to be important in
> a given instance, and without inflating marginal ones.

*Banks*, 540 U.S. at 35-36.

For purposes of constitutional reasonableness and § 3109, the

preferred method for officers to enter a home in execution of a search warrant is to

knock on the door, announce the officer's presence and purpose, and receive an

actual refusal or wait for that period of time from which one necessarily can infer

---

[5]The Supreme Court in *Wilson* identified a non-exhaustive list of circumstances when "the presumption in favor of announcement necessarily . . . give[s] way to contrary considerations" and an unannounced entry would be reasonable:  a threat of physical violence to officers, pursuing an escaped prisoner, and the likelihood of evidence being destroyed with advance notice.  514 U.S. at 936.  The Supreme Court in *Richards* referenced these circumstances while clarifying that "[i]n order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime, by for example, allowing the destruction of evidence."  520 U.S. at 394.  Most recently, the Supreme Court in *United States v. Banks*, 540 U.S. 31, 37 (2003), characterized the knock and announce rule as one those "factual considerations of unusual, albeit not dispositive, significance" to the reasonableness inquiry.

24

refusal. *United States v. Combs*, 394 F.3d 739, 744 (9th Cir.), *amended on other grounds and reh'g denied*, 412 F.3d 1020 (9th Cir. 2005); *see United States v. Banks*, 540 U.S. at 43.  This kind of entry is preferable for its promotion of three privacy interests:  "(1) permitting individuals to comply with the law by peaceably permitting officers to enter their homes; (2) avoiding the unnecessary destruction of property that attends a forcible entry; and (3) providing an opportunity for occupants to 'prepare themselves' for entry by law enforcment officers by, for example, 'pulling on clothes or getting out of bed.'"  *United States v. Gallegos*, 314 F.3d 456, 459 (10th Cir. 2002) (citing and quoting *Richards v. Wisconsin*, 520 U.S. 385, 393 n.5 (1997)).

        "The prevailing view in most federal circuits is that entry through open doors by law enforcement agents executing a search warrant does not implicate the 'knock and announce' statute."  *United States v. Williams*, 2005 WL 2127597, at *9 (E.D. Mich. 2005) (citing *United States v. Gatewood*, 60 F.3d 248, 250 (6th Cir.), *cert. denied*, 516 U.S. 1001 (1995); *United States v. Salter*, 815 F.2d 1150, 1152 (7th Cir. 1987); *United States v. Remigio*, 767 F.2d 730 (10th Cir.), *cert. denied*, 474 U.S. 1009 (1985); *United States v. Phillips*, 149 F.3d 1026, 1029 (9th Cir. 1998), *cert. denied*, 526 U.S. 1052 (1999)); *see also United States v. Mendoza*, 281 F.3d 712, 717 (8th Cir.), *cert. denied*, 537 U.S. 1004 (2002); *United States v.*

*Nelson*, 1989 WL 163017, at *7 (D. Kan. 1989), *aff'd*, 941 F.2d 1213 (10th Cir.

1991), *cert. denied*, 502 U.S. 1044 (1992) (and the cases referenced in each of the

above citations).  It logically follows that the requirement of a reasonable execution

"is not offended" by entering through an open door.  *United States v. Williams*,

2005 WL 2127597 at *9; *see United States v. Mendoza*, 281 F.3d at 717; *United*

*States v. Bryant*, 2005 WL 2739168 at *5 (W.D. Va. 2005).  The Tenth Circuit in

*Remigio* held that "government officials, armed with a warrant, entering a house

through an open door and in the presence of a defendant, need not comply with the

provisions of 18 U.S.C. § 3109."  767 F.2d at 733.  One rationale for this holding is

quite simply that there is no "breaking" or "unannounced intrusion" or "forcible

entry" when an officer walks through an open door in the presence of an occupant

or resident.  *Id.*; *see United States v. Williams*, 2005 WL 2127597 at *9; *United*

*States v. Bryant*, 2005 WL 2739168 at *5; *United States v. Nelson*, 1989 WL

163017 at *7 (and cases cited therein).  One court relied on the futility ground and

dispensed with the knock-and-announce requirement in an open door setting as a

hollow formality under the circumstances.  *See, e.g.*, *United States v. Mendoza*, 281

F.3d at 716-17 ("[I]t belies commonsense to think officers" must knock and

announce when officers storm a duplex announcing their presence and purpose and

come to the entrance and find no door on it.  "[I]t is difficult to imagine a case

26

where knocking could be more futile than the one at hand–where the door was not just open, but off its hinges.").  There are other settings when courts have used the futility exception because officers provided the functional equivalence of knock and announce.  *See, e.g., United States v. Dunnock*, 295 F.3d 431, 435 (4th Cir.) (knock and announce would have been "futile" when the defendant had been arrested outside his home and received the "functional equivalent of notice of authority and purpose" when he refused to give officers a key to the front door), *cert. denied*, 537 U.S. 1037 (2002); *cf. United States v. Holmes*, 387 F.3d 903, 905 (D.C. Cir. 2004) (implied recognition of functional equivalence/futility exception when officers arrive on scene as the defendant is unlocking his door, announce themselves and purpose, and take the keys from the defendant and enter the dwelling).

<u>Analysis</u>

"In making the determination of whether the Fourth Amendment has been violated by a failure to knock and announce, we must remember reasonableness is our polestar." *United States v. Mendoza*, 281 F.3d at 717. The court rejects the notion that a knock is always a prerequisite without which the officer's entry will be "per se unreasonable under the Fourth Amendment." *United States v. Combs*, 394 F.3d at 744.  "A physical knock is only one factor to be

27

considered in the reasonableness inquiry and is not determinative." *Id*. at 743 (citation omitted).

Consistent with the governing legal precedent cited above, the court finds that Investigators Zimmerman and Feldman did not forcibly enter onto the curtilage of the dwelling when they walked through the open garage door in the presence of a person appearing to have common authority over the dwelling. The investigators observed that David Bolen had seen them walk around the corner from his position near the open garage door. The functional equivalence of knock and announce occurred when the investigators encountered David Bolen[6] standing immediately adjacent to the open door, identified themselves, and announced they were there to execute a search warrant. It would have been a futile gesture for the investigators to knock on the garage door frame after they had made contact with someone from the dwelling and announced their presence and purpose. A person

---

[6]Under the quickly evolving circumstances commonly associated with executing a search warrant, the investigators reasonably inferred that Bolen was someone who had or was exercising common authority over the premises. The condition of the garage, Bolen's location, his reaction to the investigators, and his admitted knowledge about other occupants in other parts of the dwelling provide a reasonable basis under the circumstances for the investigators to believe that Bolen shared common authority over the dwelling. There is no evidence that after being told the investigators were executing a search warrant that Bolen then denied having any lawful authority over the premises.

28

knocks on a closed door to have the door opened in order to address the person opening it.  When the door is already open and when an occupant is present and has been addressed, it would be a hollow and meaningless formality to require officers to knock and announce.

Nor was it constitutionally unreasonable for Investigator Feldman to open the unlocked interior garage door without knocking but while announcing "police, search warrant" and then enter the rest of the dwelling.  This conclusion is animated by the general rule that "[o]nce law enforcement officers lawfully enter a house, they need not comply with the knock and announce statute [18 U.S.C. § 3109] before entering every other closed door within residence." *United States v. Johnson*, 573 F. Supp. 998, 1000 (D. Kan. 1983) (citing *United States v. Crawford*, 657 F.2d 1041 (9th Cir. 1981)), *aff'd*, 767 F.2d 730 (10th Cir.), *cert. denied*, 474 U.S. 1009 (1985); *see United States v. Oates*, 173 F.3d 651, 657 (8th Cir.), *cert. denied*, 528 U.S. 890 (1999); *United States v. Bragg*, 138 F.3d 1194, 1195 (7th Cir. 1998) (§ 3109 does not apply "per door" and "police may use all available entrances, without knocking separately at each."); *United States v. Remigio*, 767 F.2d at 732 n.2 ("Once law enforcement officials lawfully enter a house, they need not always comply with the knock and announce statute before entering every other closed door within the residence.").  Besides this general rule, the totality of the

29

circumstances sustain the reasonableness of Investigator Feldman's conduct.
Because the interior door was unlocked, the potential for destruction of property
was minimal.  Because the investigator's presence and purpose was announced to
the entire dwelling before entering and then repeated as the search extended to other
parts of the house, the potential for violence was diminished.  Other circumstances
of some relevance here include the time of day, the destructibility of the drug
evidence, and the possibility that occupants in other parts of the dwelling could have
overheard the investigators' statements to Bolen.  Having accomplished the
functional equivalence of a knock and announce by their encounter with David
Bolen, the investigators lawfully gained entry to the dwelling and their decision to
rely on this procedure and to dispense with knocking at the interior garage door
does not render unlawful their entry into the rest of the dwelling.

          The issue here is not in hindsight what more the investigators could
have done but rather the basic reasonableness of what was done.  Reasonableness
being a function of the facts, the court recognizes this case is a close call.  After
evaluating the totality of the circumstances within the framework of existing
precedent, the court concludes the execution of the search warrant was reasonable
in that the functional equivalent of a knock and announce was accomplished before
the investigators' entered the dwelling's curtilage through an open door in the

30

presence of an occupant and in that the investigators continued to announce their

presence and purpose as they encountered other closed doors in the dwelling.

IT IS THEREFORE ORDERED that the defendant's motion to

dismiss multiplicitous indictment or to require the government to elect counts (Dk.

14) is denied;

IT IS FURTHER ORDERED that the defendant's motion to disclose

expert testimony (Dk. 17), and motion  for notice of evidence (Dk. 19) are denied as

moot in light of the government's response;

IT IS FURTHER ORDERED that the defendant's motion to suppress

evidence found in the search of the residence at 214 Iowa Avenue, Salina, Kansas,

on April 15, 2005, (Dk. 20) is denied.

Dated this 31st day of March, 2006, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge